IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION

ROBERT CARPENTER EDWARDS,

                                                  Plaintiff,

vs.

                                                  CASE NO.: 1:23-cv-184

BACKGROUND INVESTIGATION               **JURY TRIAL DEMANDED**
BUREAU, LLC,

                                                  Defendant.

## COMPLAINT

Plaintiff Robert Carpenter Edwards ("Plaintiff" or "Mr. Edwards"), by and through his attorneys, brings the following Complaint against Background Investigation Bureau, LLC, doing business as "BIB" ("Defendant" or "BIB"), for violations of the federal Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681, *et seq*., arising out of an employment background check report that falsely portrayed Plaintiff as a misdemeanant and felon with a history of committing violent crimes, including kidnapping, assault by strangulation, assault by inflicting serious injury while minor present, domestic violence, and forcible sexual offenses.

## INTRODUCTION

1. This is an individual action for damages, costs and attorneys' fees brought against Defendant pursuant to the Fair Credit Reporting Act, 15 U.S.C. §§ 1681, *et seq.* ("FCRA").

2. Defendant is a consumer reporting agency that compiles and maintains files on consumers on a nationwide basis. It sells consumer reports generated from its database and

1

furnishes these consumer reports to employers who use the reports to make decisions regarding whether to offer employment to certain consumers.

3. Defendant falsely reported to Plaintiff's employer, a public school, that he has at least six (6) pending violent misdemeanor and felony charges, including Second-Degree Kidnapping, Assault by Strangulation, Interference with Emergency Communications, Assault Inflicting Serious Bodily Injury while a minor was present, Second-Degree Forcible Sexual Offense, and Communicating Threats. Defendant's reporting was grossly inaccurate and untrue. Plaintiff has never been charged with or convicted of any of these violent crimes. Plaintiff's employer ordered him off school property in the middle of his workday and rescinded his offer of employment after receiving an employment screening background check report from Defendant, which included these six (6) violent criminal offenses, which do not belong to Plaintiff.

4. Defendant's inaccurate report could have been easily remedied had Defendant consulted widely available public records pertaining to the criminal offenses reported prior to issuing Plaintiff's report to his employer in the first place. Had Defendant even performed a cursory review of the widely available public court records, it would have discovered that the actual criminal who committed these violent offenses is of a different race than Plaintiff, has a different middle name than Plaintiff, has a different date of birth than Plaintiff, has an entirely different Social Security Number than Plaintiff, and resided at an address over 286 miles away from Plaintiff's address at the time he was arrested and charged with the violent offenses.

5. Defendant does not employ reasonable procedures to assure the maximum possible accuracy of the information it reports regarding consumers. Defendant's failure to employ reasonable procedures resulted in Plaintiff's report being grossly inaccurate.

6. Defendant committed these violations pursuant to its standard policies and practices, which harm innocent consumers seeking employment by prejudicing their prospective employers with inaccurate and defamatory criminal record information.

7. Defendant's inaccurate reporting caused Plaintiff to be walked off his job in the middle of the school day and denied access to school property for a time period thereafter, causing Plaintiff to suffer a range of actual damages, including without limitation, loss of employment opportunities, wages, and benefits; loss of economic opportunities and positions and advances in the future; loss of time and money disputing to try and correct his inaccurate employment screening background check report; significant damage to his reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, stress, fear, frustration, humiliation, and embarrassment.

8. As a result of Defendant's conduct, action, and inaction, Plaintiff brings claims for Defendant's failure to follow reasonable procedures to assure maximum possible accuracy of the contents of his consumer report based on § 1681e(b) of the FCRA.

## THE PARTIES

9. Plaintiff Robert Carpenter Edwards is an individual person residing in the Town of Clyde, County of Haywood, and State of North Carolina.

10. Defendant Background Investigation Bureau, LLC is a North Carolina limited liability corporation doing business throughout the United States, including both in the State of North Carolina and this District, and has a principal place of business located at 9710 Northcross Center Court, Suite 100, Huntersville, North Carolina 28078.

11. Among other things, Defendant sells background check reports to employers for their use in deciding whether to offer employment to prospective employees or to take adverse

action based on such reports, such as termination, failure to hire, or failure to promote. These reports are provided in connection with a business transaction initiated by the employer.

12. Defendant is a consumer reporting agency as defined at 15 U.S.C. § 1681a(f) because for monetary fees, it regularly engages in the practice of evaluating and/or assembling information on consumers for the purpose of furnishing consumer reports for employment purposes to third parties, and uses interstate commerce, including the Internet, for the purpose of preparing and furnishing such consumer reports.

## JURISDICTION AND VENUE

13. This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p, which allow claims under the FCRA to be brought in any appropriate court of competent jurisdiction.

14. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

## STATUTORY BACKGROUND

15. Enacted in 1970, the FCRA's passage was driven in part by two related concerns: first, that consumer reports were playing a central role in people's lives at crucial moments, such as when they applied for a job or for credit, and when they applied for housing. Second, despite their importance, consumer reports were unregulated and had widespread errors and inaccuracies.

16. While recognizing that consumer reports play an important role in the economy, Congress wanted consumer reports to be "fair and equitable to the consumer" and to ensure "the confidentiality, accuracy, relevancy, and proper utilization" of consumer reports. 15 U.S.C. § 1681.

17. Congress, concerned about inaccuracies in consumer reports, specifically required consumer reporting agencies to follow "reasonable procedures to assure maximum possible accuracy" in consumer reports. 15 U.S.C. § 1681e(b).

18. Consumer reports that contain factually incorrect information belonging to an entirely different consumer are neither maximally accurate nor fair to the consumers who are the subjects of such reports.

### THE FCRA'S PROTECTIONS FOR JOB APPLICANTS

19. Despite its name, the Fair Credit Reporting Act covers more than just credit reporting, it also regulates employment background check reports like the report Defendant prepared in Plaintiff's name and published to his employer.

20. The FCRA provides a number of protections for job applicants who are subjected to background checks.

21. In the parlance of the FCRA, background checks are "consumer reports," and providers of background checks, like Applicant Insight, are "consumer reporting agencies." 15 U.S.C. §§ 1681a(d), (f).

22. Under 15 U.S.C. § 1681e(b), consumer reporting agencies are required "to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."

### FACTS

**Defendant Publishes a Grossly Inaccurate Employment Report to Plaintiff's Employer**

23. In or about June 2021, Plaintiff applied online for full-time employment with Jackson County Public Schools ("JCPS") to work as a licensed science teacher at Scotts Creek Elementary ("Scotts Creek") in Sylva, North Carolina.

24. Shortly thereafter, in or about June 2021, Plaintiff received an email and phone call from the Principal at Scott's Creek, April Bryson ("Principal Bryson"), confirming receipt of his online application and requesting Plaintiff's availability to schedule a phone interview for the open teaching position.

25. In or about July 2021, Plaintiff successfully completed a phone interview with Principal Bryson. At the conclusion of the phone interview, Principal Bryson requested Plaintiff's availability to come into Scotts Creek for an in-person interview.

26. Shortly thereafter, in or about July 2021, Plaintiff successfully completed an in-person interview at Scotts Creek with Principal Bryson, Assistant Principal Ms. Cook, and another teacher. During the in-person interview, Principal Bryson discussed with Plaintiff the likelihood that he would be teaching multiple subjects, including math, science, and social studies. At the conclusion of the in-person interview, Principal Bryson communicated to Plaintiff an offer for full-time employment as a licensed teacher, contingent upon passing a background check, which Plaintiff accepted.

27. Plaintiff was particularly excited about the job opportunity with JCPS, and specifically at Scotts Creek, and considered it an ideal job for him because it was a full-time position that paid well at a starting annual salary of $32,500.00 (over the ten-month school year), was going to give him an opportunity to teach subjects for which he is licensed and enjoys, was located in close proximity to his residence, and offered full benefits, including a 401(k) and 401(k) employer matching program, pension, health insurance, opportunities for advancement, paid time off, and paid training.

28. Jackson County Public Schools contracted with Defendant to conduct background checks, including criminal background checks, on its prospective employees and new hires.

29. On or about August 5, 2021, JCPS ordered a criminal background check on Plaintiff from Defendant.

30. On August 6, 2021, in accordance with its standard procedures, Defendant completed Plaintiff's employment screening background check report ("employment report").

31. Defendant's employment report on Plaintiff contained multiple pages of information, including least six (6) grossly inaccurate and stigmatizing pending violent misdemeanor and felony charges that do not belong to Plaintiff.

32. Defendant's employment report listed, in part, the following pending misdemeanor and felony criminal charges and records from Cumberland County, North Carolina, which appeared in Plaintiff's employment report as follows:

```
AOC - NORTH
CAROLINA                              DL=(NC)
EDWARDS,ROBERT                        S=M R=B
DOB=09/21/1987
ADDR: 1464 YELLOW RIBBON D R APT U FAYETTEVILLE NC
28303
OFFENSES:
COURT: CUMBERLAND (250)

DOCKET NUM: 21CR
054367
FILED: 05/24/2021 TRIAL:
09/15/2021
  CHRG: SECOND DEGREE
KIDNAPPING              OFFENSE DATE: 05/23/2021
    CODE/STATUTE: 14-39
    OFFENSE
TYPE: FELONY
  DISP: SECOND DEGREE
KIDNAPPING        PENDING
    CODE/STATUTE: 14-39
    OFFENSE
TYPE: FELONY
    VRA: Y
  CHRG: ASSAULT BY
STRANGULATION           OFFENSE DATE:
05/23/2021
    CODE/STATUTE: 14-
32.4(B)
    OFFENSE
TYPE: FELONY
  DISP: ASSAULT BY
STRANGULATION     PENDING
    CODE/STATUTE: 14-
32.4(B)
    OFFENSE
TYPE: FELONY
    VRA: Y
  CHRG: INTERFERE EMERG
COMMUNICATION           OFFENSE DATE: 05/23/2021
    CODE/STATUTE: 14-
```

```
   DISP: INTERFERE EMERG
COMMUNICATION     PENDING
   CODE/STATUTE: 14-
286.2
   OFFENSE
TYPE: MISDEMEANOR
   VRA: Y
   COURT TYPE: CRIMINAL DISTRICT
COURT


---+--- ---+--- ---+---

***** POSSIBLE RECORD - VERIFY WITH YOUR SUBJECT
*****
AOC - NORTH
CAROLINA                              DL=(NC)
EDWARDS,ROBERT                        S=M R=B
DOB=09/21/1987
ADDR: 1464 YELLOW RIBBON D R APT U FAYETTEVILLE NC
28303
OFFENSES:
COURT: CUMBERLAND (250)

DOCKET NUM: 21CR
054368
FILED: 05/24/2021 TRIAL:
09/15/2021
   CHRG: ASLT INF SER INJ MINOR
PRESENT         OFFENSE DATE: 05/23/2021
   CODE/STATUTE: 14-
33(D)
   OFFENSE
TYPE: MISDEMEANOR
   DISP: ASLT INF SER INJ MINOR
PRESENT    PENDING
   CODE/STATUTE: 14-
33(D)
   OFFENSE
TYPE: MISDEMEANOR
   VRA: Y
   CHRG: ASLT INF SER INJ MINOR
PRESENT         OFFENSE DATE: 05/23/2021
   CODE/STATUTE: 14-
33(D)
```

TYPE: MISDEMEANOR
   VRA: Y
   COURT TYPE: CRIMINAL DISTRICT
COURT


---+--- ---+--- ---+---


***** POSSIBLE RECORD - VERIFY WITH YOUR SUBJECT *****
AOC - NORTH
CAROLINA                                    DL=(NC)
EDWARDS,ROBERT                              S=M R=B
DOB=09/21/1987
ADDR: 1464 YELLOW RIBBON D R APT U FAYETTEVILLE NC
28303
OFFENSES:
COURT: CUMBERLAND (250)

DOCKET NUM: 21CR
054518
FILED: 05/28/2021 TRIAL:
09/15/2021
   CHRG: SECOND DEGREE FORCE SEX
OFF            OFFENSE DATE: 05/23/2021
   CODE/STATUTE: 14-
27.27
   OFFENSE
TYPE: FELONY
   DISP: SECOND DEGREE FORCE SEX
OFF     PENDING
   CODE/STATUTE: 14-
27.27
   OFFENSE
TYPE: FELONY
   VRA: Y
   CHRG: SECOND DEGREE FORCE SEX
OFF            OFFENSE DATE: 05/23/2021
   CODE/STATUTE: 14-
27.27
   OFFENSE
TYPE: FELONY
   DISP: SECOND DEGREE FORCE SEX
OFF     PENDING
   CODE/STATUTE: 14-

9

```
***** POSSIBLE RECORD - VERIFY WITH YOUR SUBJECT
*****
AOC - NORTH
CAROLINA                                    DL=(NC)
EDWARDS,ROBERT                              S=M R=B
DOB=09/21/1987
ADDR: 1464 YELLOW RIBBON D R APT U FAYETTEVILLE NC
28303
OFFENSES:
COURT: CUMBERLAND (250)

DOCKET NUM: 21CR
054520
FILED: 05/28/2021 TRIAL:
09/15/2021
  CHRG: COMMUNICATING
THREATS              OFFENSE DATE: 05/23/2021
    CODE/STATUTE: 14-
277.1
    OFFENSE
TYPE: MISDEMEANOR
  DISP: COMMUNICATING
THREATS         PENDING
    CODE/STATUTE: 14-
277.1
    OFFENSE
TYPE: MISDEMEANOR
   VRA: Y
  CHRG: COMMUNICATING
THREATS              OFFENSE DATE: 05/23/2021
    CODE/STATUTE: 14-
277.1
    OFFENSE
TYPE: MISDEMEANOR
  DISP: COMMUNICATING
THREATS         PENDING
    CODE/STATUTE: 14-
277.1
    OFFENSE
TYPE: MISDEMEANOR
   VRA: Y
```

33. ***None*** of the above-referenced criminal convictions from Cumberland County, North Carolina belong to Plaintiff.

34. Plaintiff has ***never*** been arrested for or charged with any of the above-referenced crimes in his life.

35. A cursory review of the criminal records as reported in the employment report and as reported in the widely available underlying public court records from Cumberland County, North Carolina, confirm that the pending criminal charges belong to an unrelated male, Robert ***Lee*** Edwards ("Criminal Robert Lee Edwards"). Had Defendant actually consulted or obtained the widely available underlying public court records, it would have seen obvious discrepancies between Criminal Robert Lee Edwards and Plaintiff. The discrepancies that should have caused Defendant to realize Plaintiff is not the same person as Criminal Robert Lee Edwards include the following:

   a) Plaintiff's full legal name is Robert ***Carpenter*** Edwards, which is indicated on the face of the employment report, yet the underlying public court records pertaining to the serious misdemeanor and felony charges confirm the charges belong to an unrelated male named Robert ***Lee*** Edwards;

   b) Plaintiff is a ***Caucasian*** male, yet the widely available underlying public court records for Criminal Robert Lee Edwards indicate that he is a ***Black*** male;

   c) Plaintiff's address information and history indicates that he resides in and has only ever resided in ***Clyde,*** North Carolina, yet the address information listed on the widely available underlying public court records for Criminal Robert Lee Edwards indicates that he resided in ***Fayetteville,*** North Carolina at the time he

committed, was arrested for, and charge with all of the above-referenced criminal offenses, which is over 286 miles from where Plaintiff resides;

d) Plaintiff's Social Security number, which was provided to Defendant prior to its preparation and assembly of his employment report, is different than Criminal Robert Lee Edwards' Social Security number; and

e) Plaintiff has never been charged with or convicted of a crime in Cumberland County, North Carolina, or in any other state in the United States.

36. The sole reason the inaccurate criminal convictions and records were reported as belonging to Plaintiff is that Defendant failed to follow reasonable procedures to assure the maximum possible accuracy of the information contained within Plaintiff's employment report. Had Defendant followed reasonable procedures, it would have obtained and reviewed the underlying public records and discovered that the six (6) inaccurate, stigmatizing pending criminal charges contained within Plaintiff's employment report belong to an unrelated individual who is of a different race and has an entirely different middle name, Social Security number, and address history than Plaintiff.

**Plaintiff is Ordered Off Scott Creek's Property and Jackson County Public Schools Suspends Plaintiff's Employment as a Direct Result of Defendant's Inaccurate Employment Report**

37. On or about August 9, 2023, Plaintiff began his full-time employment with Scott Creek where he began writing curriculum and organizing his classroom for the upcoming school year.

38. On August 9, 2023, at or about 11:30am EST and while sitting in a faculty meeting at Scotts Creek, Principal Bryson informed Plaintiff that he needed to leave school property immediately and instructed him to go to the Jackson County School Board Administrative Office.

Plaintiff, shocked, confused, and embarrassed in front of all of his fellow colleagues, immediately asked Principal Bryson why he needed to leave school property. Principal Bryson stated that she could not tell him why or give him any additional information at that time.

39. Stressed, confused, and worried, Plaintiff left school property and drove in his vehicle to the Jackson County School Board Administrative Office. When he arrived, he spoke with Superintendent of Jackson County Schools, Jacob Buchanan ("Superintendent Buchanan"), who was waiting for him. Superintendent Buchanan invited Plaintiff into his office and informed him that his employment status had been suspended due to some very serious and concerning criminal records that had come back in his background check report. Plaintiff, who had yet to even see a copy of his report, asked Superintendent Buchanan if he could see the report and its contents. Superintendent Buchanan printed the report and showed it to Plaintiff. Plaintiff was beside himself upon seeing the numerous violent misdemeanor and felony charges, including kidnapping, assault, and sex crimes. Plaintiff immediately noticed the crimes did not belong to him and, rather, a black man living in Fayetteville, North Carolina. Plaintiff assured Superintendent Buchanan the criminal charges did not belong to him and even pointed out some of the discrepancies contained on the face of the employment report. Superintendent Buchanan said he was not the person to facilitate correcting the report and instructed Plaintiff to contact BIB. Plaintiff told Superintendent Buchanan that he desired to have his report fixed immediately, and informed Superintendent Buchanan that he was supposed to be over at Scotts Creek writing curriculum and preparing his classroom given that school was set to start in only three short days.

40. Superintendent Buchanan put Plaintiff in a conference room. Plaintiff immediately contacted his brother, an attorney, and the two of them contacted BIB via phone to initiate a dispute

of the inaccurate criminal record information. Plaintiff and his brother spoke with a representative of BIB who informed Plaintiff to complete a written dispute via BIB's online dispute portal.

41. On or about August 9, 2023, Plaintiff, with the assistance of his brother, submitted a dispute via BIB's online dispute portal. In that dispute, Plaintiff specifically listed the above-referenced case numbers and explained in great detail that the criminal charges did not belong to him; that he is Caucasian and not an African American male, as indicated in the charge information; that he never resided in Fayetteville; and that as a result of the inaccurate reporting, he had been denied access to school grounds. Plaintiff requested that BIB promptly remove all criminal records not belonging to him and notify his employer immediately. Plaintiff, through his brother, also sent a dispute to BIB via email insisting that the matter be escalated so as to avoid causing him further harm.

42. On or about August 10, 2021, Plaintiff received email from Dispute Resolution at BIB, indicating that his dispute had been received and that his report had been updated, corrected, and that Jackson County Public Schools had been notified.

43. On or about August 12, 2021, Principal Bryson instructed Plaintiff to go back to the Jackson County School Board Administrative Office to clear his name and be approved to be allowed back on Scotts Creek's campus.

44. By the time BIB completed its reinvestigation and corrected Plaintiff's employment report, Plaintiff had already missed at least four (4) days of work and suffered lost wages, benefits, significant emotional distress, and a plethora of other actual damages as outlined below.

45. Plaintiff intends to apply for jobs in the future and given the ubiquity of pre-employment background checks and the size of BIB, there is a real and immediate threat that Plaintiff will suffer the same injury with respect to future applications.

46. In creating and furnishing Plaintiff's employment report, Defendant failed to follow reasonable procedures to assure that the report was as accurate as maximally possible. In particular, Defendant allowed a match in spite of the existence of information which clearly established that Criminal Robert Lee Edwards is not Plaintiff, such as the fact that widely available public court records confirm that Criminal Robert Lee Edwards does not share Plaintiff's date of birth, middle name, race, Social Security number, or address history. This exculpatory public record information was widely available to Defendant prior to publishing Plaintiff's employment report to Jackson County Public Schools, but Defendant failed to perform even a cursory review of such information.

47. As a result of Defendant's violations of the FCRA, Plaintiff has suffered a range of actual damages, including without limitation, loss of employment opportunities, wages, and benefits; loss of economic opportunities and positions and advances in the future; the expenditure of time and money trying to correct Defendant's erroneous employment report; significant damage to his reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

## DEFENDANT'S ILLEGAL BUSINESS PRACTICES

48. Over the past 15 years, there has been increased collection and aggregation of consumer data, including criminal records data. As a result of the increasing availability of this data, there has been a boom in the background check industry.

49. As summarized in a recent report by the Consumer Financial Protection Bureau[1], a 2018 survey of employers found that 95 percent of employers surveyed conducted one or more types of background screening. (CFPB Report at 4.)

50. The criminal background check industry takes in revenues of $3 billion a year and is growing.[2]

51. Criminal background checks are generally created by running automated searches through giant databases of aggregated criminal record data. The reports are created and disseminated with little to no manual, in-person review, and the underlying court records are rarely directly reviewed in creating criminal background checks.

52. Background check companies collect millions of criminal records from a number of sources with data from county, state, and federal level sources. The data included on the reports is often not obtained directly from court records on an individual basis but instead is purchased in bulk or scraped from court websites.

53. Defendant is well aware of the FCRA and has been sued numerous times for reporting inaccurate or outdated information.

54. Defendant places its business interests above the rights of consumers and reports such inaccurate information because it is cheaper for Defendant to produce reports containing information that is inaccurate and incomplete than it is for Defendant to exert proper quality control over the reports prior to their being provided to Defendant's customers.

---

[1] CFPB, Market Snapshot: Background Screening Reports (Oct. 2019), https://files.consumerfinance.gov/f/documents/201909_cfpb_market-snapshot-background-screening_report.pdf ("CFPB Report").
[2] IBISWorld, Inc., *Background Check Services in the US: Report Snapshot*, available at http://www.ibisworld.com/industry/background-check-services.html.

55. Defendant reports such erroneous and incomplete information because it wants to maximize the automation of its report creation process, thereby saving the costs associated with conducting the additional review necessary to remove the inaccurate or out-of-date entries.

56. Defendant charges its customers the same price for reports that are grossly inaccurate as it does for reports that are accurate.

57. Appropriate quality control review of Plaintiff's report would have made clear that Defendant was reporting at least six (6) pending criminal charges and records that belong to an entirely different individual.

58. Defendant is aware of the FCRA requirements as it claims to "supply accurate background checks with efficient turnaround times" on its website.

## CLAIMS FOR RELIEF

### COUNT I
### 15 U.S.C. § 1681e(b)
### Failure to Follow Reasonable Procedures to Assure Maximum Possible Accuracy

59. Plaintiff realleges and incorporates by reference the allegations contained in Paragraphs 1-58, above.

60. Defendant is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f).

61. At all times pertinent hereto, Plaintiff was a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

62. At all times pertinent hereto, the above-mentioned employment report was a "consumer report" as that term is defined by 15 U.S.C. § 1681a(d).

63. Defendant violated 15 U.S.C. § 1681e(b) by failing to establish or to "follow reasonable procedures to assure maximum possible accuracy" in the preparation of Plaintiff's employment report and the files it published and maintains.

64. As a result of Defendant's violations of 15 U.S.C. § 1681e(b), Plaintiff has suffered a range of actual damages, including without limitation, loss of employment opportunities, wages, and benefits; loss of economic opportunities and positions and advances in the future; the expenditure of time and money trying to correct Defendant's erroneous employment report; significant damage to his reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

65. Defendant willfully violated 15 U.S.C. § 1681e(b) in that its actions were in reckless disregard of the requirements of this provision. Thus, Defendant is liable for punitive damages pursuant to 15 U.S.C. § 1681n.

66. In the alternative, Defendant negligently violated 15 U.S.C. § 1681e(b), which entitles Plaintiff to a recovery under 15 U.S.C. § 1681o.

67. Pursuant to 15 U.S.C. § 1681o and § 1681n, Plaintiff is entitled to actual damages, statutory damages, punitive damages, and reasonable attorneys' fees and costs.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief as follows:

a) Determining that Defendant negligently and/or willfully violated the FCRA;

b) Awarding actual damages, statutory damages, and punitive damages as provided by the FCRA;

c) Awarding reasonable attorneys' fees and costs as provided by the FCRA; and

d) Granting further relief, in law or equity, as this Court may deem appropriate and just.

# DEMAND FOR JURY TRIAL

68. Plaintiff demands a trial by jury.

Dated: July 20th, 2023

        **MAGINNIS HOWARD**

        */s/ Karl S. Gwaltney*
        Karl S. Gwaltney, NC Bar No.: 45118
        7706 Six Forks Road, Suite 101
        Raleigh, NC 27615
        Telephone: (919) 526-0450
        Fax: (919) 882-8763
        Email: kgwaltney@maginnishoward.com

        **BERGER MONTAGUE PC**

        Hans W. Lodge, MN Bar No. 397012*
        1229 Tyler Street NE, Suite 205
        Minneapolis, MN 55413
        Telephone: (612) 607-7794
        Fax: (612) 584-4470
        Email: hlodge@bm.net
        *\*Pro Hac Vice Forthcoming*

        *ATTORNEYS FOR PLAINTIFF*